FRANK SONKA, Appellant, v. PETER YONKERS, Appellee.

CHATTEL MORTGAGES: Insufficient Description. A description in
1   a chattel mortgage of *"the crop from 11 acres of the following de-
    scribed property, which is planted to hay"* is insufficient to impart
    notice to third parties.

LANDLORD AND TENANT: Waiver of Lease Clause. Evidence held
2   insufficient to show a mutual cancellation of the provisions of a
    lease.

DISMISSAL AND NONSUIT: Dismissal in Replevin. Whether plain-
3   tiff in replevin who has obtained the property on the writ and sold
    the property may dismiss, *quaere.*

DISMISSAL AND NONSUIT: Denial of Right—Indefinite Record. He
4   who complains that he was denied the right to dismiss must present
    a record from which it can be definitely determined at what par-
    ticular stage of the proceedings he sought to exercise the right.

TRIAL: Directed Verdict—Least Value Under Evidence. Plaintiff
5   may not complain of a properly directed verdict against himself
    when such verdict was computed on the basis of plaintiff's lowest
    estimate of value and defendant does not object.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

JANUARY 11, 1921.

REHEARING DENIED MAY 10, 1921.

ACTION in replevin to recover possession of certain hay. The hay was sold by plaintiff after the replevin, and defendant, claiming to own one half of the hay so sold, in his answer asked

judgment against plaintiff therefor. Trial to a jury, and at the conclusion of plaintiff's evidence, the trial court sustained defendant's motion for a directed verdict in his favor; and, defendant electing to take a money judgment, the court directed the jury to return a verdict accordingly, and to fix the value of defendant's half of the hay at $160, this being, as appellee contends, the lowest valuation put upon the hay by any of the witnesses. Judgment was entered in favor of the defendant upon the verdict, and the plaintiff appeals.—*Affirmed.*

*Dawley & Jordan,* for appellant.

*F. L. Anderson,* for appellee.

PRESTON, J.—One Chick was the equitable owner of some 40 acres of land, which includes the land hereinafter described, which defendant claims he had leased from Chick, from April

1. CHATTEL MORTGAGES: insufficient description.

1, 1918. During the season of 1918, defendant cut and put up all the hay—the two stacks of hay in controversy. The hay was on the land at the time of the replevin. The principal contention between the parties seems to be as to whether a chattel mortgage executed by Chick, December 28, 1917, to this plaintiff, contains a sufficiently definite description of the crop of hay for the year 1918, as against defendant's rights, under a written lease of the land from Chick, dated April 1, 1918, the hay, as stated, having been put up by defendant thereafter. The mortgage was recorded, but it does not appear that defendant had any actual notice. We take it, though it does not clearly appear, that the trial court directed a verdict for the defendant upon the theory that plaintiff's mortgage was invalid, and that the description therein was insufficient to impart notice to the defendant. The clause of the mortgage, so far as it is material, reads:

"The crop from twenty-five acres of the following described property, which is planted to rye, and the crop from eleven acres of the following described property, which is planted to hay."

The 40 acres is correctly described, but the mortgage does not state the year in which the crop is to be raised. The lease provides, among other things, that Chick agrees to furnish 14

acres, or thereabouts, to be put in oats by defendant; that Chick is to furnish $20 to pay for one half the seed, and is also to pay one half the threshing bill; that defendant is to furnish the other half of the seed, and to plant, harvest, and thresh the crop in seasonable time, defendant to receive one half the crop for his labors. Chick agrees to give defendant plenty of time to remove his share from the place. Defendant further agrees to cut and put up what hay there is on the place, and is to receive one half of the crop for his labor. It appears that, previous to the date of the mortgage, Chick had put in some seed on the land which had grown up into grass, and had once been harvested to hay. Appellant's contention is that the same field had been replanted, in the process of nature, to timothy and clover, and that such was the condition when the chattel mortgage was given.

1. Appellant cites a large number of cases to the proposition, as he states it, that, where a crop actually in the ground, and to be harvested in the future, is mortgaged, and the mortgage accurately describing it is duly recorded, the rights of the holder of such a mortgage are superior to any rights thereafter acquired by a third person from the mortgagee. We do not understand that defendant is claiming any rights from the mortgagee. He is claiming from the mortgagor, Chick. Perhaps this is not very material, as to the question of description in the mortgage as to the year. Among the cases cited is *Pennington v. Jones*, 27 Iowa 37. We find no such case at the citation, but assume that reference is made to 57 Iowa 37. It is said by appellant that this case was reversed in *Luce v. Moorehead*, 73 Iowa 498. We do not think it was. The *Pennington* case holds that, before a mortgage on crops to be sown or planted can be regarded as valid as against third persons, the year or term in which the crops are to be grown must be stated at least, and the court said that, under the form of the mortgage in that case, they did not determine whether it would be a sufficient description, even if the year was given. The holding was, however, that the mortgage was void because the year was not given.

In the *Luce* case, where the description was "crops growing and to be grown," it was held that, though the year was not given in the mortgage, and though the description was invalid

as to crops to be grown, it was good as to crops actually growing at the time of the execution of the mortgage. In that case, the property was corn, and necessarily would apply to the crop of corn growing in the same year it was planted and harvested. Corn is not planted in the year before it is grown, nor harvested the year after. The property in controversy in this case is hay, and it is thought by appellant that it was planted and growing December 28, 1917, when the mortgage was given. In a sense, possibly, grass is growing all the time,—that is, in December, the roots, at least, would be in the ground; but we think it could not be said that, because of this, the instant case would be brought within the rule of the *Luce* case. Possibly, if the mortgage was dated in the spring or summer of 1917, it could be said that the crop of grass, later in the same year, made into hay, would cover the crop of 1917. In other words, that might be a sufficient description of the year. But it seems to us that it could not be said that a mortgage executed in December, 1917, would cover the crop of grass or hay grown and harvested in 1918, under the theory of the *Luce* case that the crop of 1918 was growing at the time of the execution of the mortgage. True, the crop in question, claimed by plaintiff, was grown and harvested in 1918, but we think that crop was not covered by the description in the mortgage as a growing crop in December, 1917. We shall not stop to review, at any length, the other cases cited by appellant, but content ourselves with a brief reference thereto. The description in each case varies. *Eggert & Thoren v. White,* 59 Iowa 464, holds that a mortgage describing the crops raised on certain land, without giving the year, was insufficient to put defendants on inquiry as to crops, none of which were raised, and only five acres of which were sown, at the time of the execution of the mortgage, and that the description could not be aided by parol testimony. *Held* that plaintiff could not recover, under such a mortgage. The crop in that case was flax and wheat, and other grain or produce. The *Pennington* case, supra, was approved. It was also held in that case that one who seeks, by virtue of a chattel mortgage, to recover possession of property which he claims is covered by it, must rely on the strength of his own title, and not on the weakness of the title of his adversary. Under such a holding, the plaintiff

in this case must rely upon the strength of his title. *Cray v. Currier,* 62 Iowa 535, *Peterson v. Foli,* 67 Iowa 402, and *Wheeler v. Becker,* 68 Iowa 723, have little, if any, bearing on the question now under consideration. In the first of these cases, a word had been omitted which the court was not willing to supply. In the second case, the question was whether a horse could be identified by the description in the mortgage, and it was held that, under the evidence, this was a question for the jury. In the *Wheeler* case, the mortgage described a horse, which description was held sufficient, in connection with a provision that the property was to remain in the hands of the mortgagor. In the instant case, the hay cut by the defendant was not in the possession of the mortgagor, Chick, and it never was. Indeed, one of the contentions of appellee is that neither Chick nor plaintiff ever acquired the property. *Barr v. Cannon & Gunn,* 69 Iowa 20, is against appellant's contention, and follows the *Eggert* and *Pennington* cases. In *Norris v. Hix,* 74 Iowa 524, 525, and *Johnson v. Rider,* 84 Iowa 50, the mortgages stated the year in which the crops were grown. In *King v. Howell,* 94 Iowa 208, the defect in the mortgage was in the number of the township, but the mortgage covered all hay in stack belonging to the mortgagor on certain described property, and a mower owned and kept by him. It was held that, since he had property answering such description in Township 92, though he did not have in 91, it was sufficient to enable third persons, aided by the inquiries suggested by the instruments, to identify said property, despite the erroneous statement of the township. No question as to the year. *Hopkins Fine Stock Co. v. Reid,* 106 Iowa 78, involved increase of live stock. We do not see that the case of *Strawhacker v. Ives & Sons,* 114 Iowa 661, has any bearing on the question now before us. In *Farmers' & Merchants' Bank v. Stockdale,* 121 Iowa 748, the description in the mortgage was too indefinite, and the recording of the same did not impart constructive notice to subsequent mortgagees. No question in that case as to the year in which crops were to be raised. In *Ashley v. Keenan,* 157 Iowa 1, the description was held sufficient, because it covered all property owned by the mortgagor, and described it as being in his possession and on his premises, etc.

*Dilenbeck v. Security Sav. Bank,* 186 Iowa 308, holds that,

as a mortgage on crops to be grown does not attach until the crop is planted, and such a mortgage does not attach to the increase of live stock until it comes into existence, a tenant cannot, by giving a mortgage just before the term begins, deprive his landlord of the lien on crops and other personal property given by the statute, and which was, as well, reserved by the lease. In the instant case, the proposition is reversed. The owner of the land, Chick, gave the chattel mortgage in question, and he, or rather, his mortgagee, the plaintiff, is seeking, under the mortgage, to deprive the defendant of his right to the crop harvested by him, under the lease between himself and plaintiff's mortgagor.

*In re Assignment of Thompson,* 164 Iowa 20, involved the construction of a chattel mortgage on a stock of goods and additions or all substitutions in the stock; also, the question of confusion of goods, and so on. We have noticed, though briefly, all the cases cited by appellant on this proposition, and we think they do not sustain his contention. Appellee relies on the *Pennington, Eggert, Barr,* and *Luce* cases, supra. Without further discussion, we think appellee's contention must be sustained, and that the mortgage was insufficient to affect the rights of the defendant.

2. Appellant's next contention is that the lease of April 1st was modified or canceled by agreement so as to omit the last clause in the lease, and that defendant waived any claim to the

2. LANDLORD AND TENANT: waiver of lease clause.

hay therein referred to. It appears that Chick gave defendant a check for $20, as provided in the lease; but, recalling the obligation of his mortgage to this crop, Chick stopped payment on the check; but soon after this, Chick gave defendant another check for the same amount, and for the same purpose. There is some evidence as to a meeting between defendant and Chick's wife and mother-in-law, in reference to canceling the lease, and that thereafter defendant agreed with Chick that he (defendant) would make no claim to the hay. As we understand the record, this was about April 10th, and after defendant had sowed the oats. Appellee's answer to this is that there was no consideration for such an agreement, and that the evidence was not sufficient to take the case to the jury on the alleged agreement to cancel. We

are inclined to appellee's view, that there was no consideration; but, without determining that, we think the evidence was not sufficient to show a mutual rescission or cancellation of that part of the lease referred to. On April 10, 1918, Chick's attorney wrote defendant that, because of the mortgage, Chick had rescinded the contract of lease. The defendant was called as a witness for plaintiff, and denied that there was any cancellation or agreement to cancel. Thereafter, and later in the year, he went ahead and harvested the hay and stacked it, and claimed to do so under the lease, as originally executed.

The court sustained defendant's objections to some of the questions propounded by plaintiff to the witnesses, and of this, complaint is made; but an examination of the record shows that substantially all such evidence went in without objection, either before or after the objections were made and sustained.

3. It is claimed by appellant that defendant, after making the modification of the lease, is, because of plaintiff's reliance thereon and change of position, and because of defendant's representation as to the modification, estopped, in this suit by plaintiff, to rely upon the contract of lease in regard to the hay. The plaintiff Sonka did not testify as a witness, or that he relied on this circumstance, or was misled, or changed his position. Appellee says that Chick, who was a witness, is handling the matter for plaintiff, and for the benefit of Chick; that they are pursuing defendant to make him pay Sonka what Chick owes him on the mortgage. We have shown that there was no modification or cancellation. We think there was no estoppel.

4. It is contended by appellant that the court erred in refusing to permit him to dismiss the case before it was finally submitted, or rather, before the court sustained defendant's motion for a directed verdict. The question is not argued, but it is one of the assignments of error, and the brief point is as follows:

3. DISMISSAL AND NONSUIT: dismissal in replevin.

"At the conclusion of plaintiff's case, and before the court has made his entry sustaining a motion to direct a verdict, the plaintiff has the right to dismiss, without prejudice."

No cases are cited. There are cases holding that a plaintiff may dismiss his action after the court has indicated his intention to sustain a motion for a directed verdict against him,

but before such verdict has, in fact, been directed, and judgment entered thereon. *Arpy v. Iowa Brick Mfg. Co.*, 150 Iowa 431; *Morrisey v. Chicago & N. W. R. Co.*, 80 Iowa 314; Section 3764, Code of 1897. There may be other cases. This seems to be the rule in an ordinary action. Upon such examination of authority as we have time to make, we discover no cases where a dismissal was permitted in a replevin case. There may be a serious question as to whether, in a replevin suit, where the plaintiff has secured possession of the property, he has such a right to dismiss. Though not cited by either side, the statute under the chapter on replevin, Code Section 4167, provides that:

"When the plaintiff desires the immediate delivery of the property, he shall execute a bond to the defendant, * * * conditioned that he will appear at the next term of the court, * * * and prosecute his action to judgment, and return the property, if a return is awarded, and pay all costs and damages that may be adjudged against him * * *"

The abstract does not set out either the bond or the writ, but it appears that plaintiff did obtain possession of the hay, and that he sold it prior to the trial; so that we are warranted in presuming that such a bond as the law requires, was given by the plaintiff. This being so, he was required to prosecute the case to judgment,—that is, to a final determination.

But aside from this, the record shows that the court sustained defendant's motion, and so announced when it was made. It does appear that, at some time after the defendant's motion, plaintiff sought to dismiss. This was probably while the court was announcing his decision, but the record is not clear at just what stage of the proceedings plaintiff sought to dismiss. Furthermore, though defendant did not denominate his answer a counterclaim, he did claim that half of the hay was his, and that his half was worth $160, and asked judgment against plaintiff for that amount. The plaintiff seems not to rely seriously upon this point; and, under all the circumstances, we would not feel justified in reversing on this ground.

5. The court, in sustaining defendant's motion, directed the jury to return the following verdict:

4. DISMISSAL AND NONSUIT: denial of right: indefinite record.

5. TRIAL: directed verdict: least value under evidence.

"We, the jury, find that the defendant is entitled to the possession of the one half of the hay replevined herein, and find that such one half was of the value of $160 on August 2, 1918."

It is thought that the court erred in this, and the assignment of error is: "In the form of verdict which the court directed the jury to return." The brief point is:

"Where the witnesses differ as to the value of a given piece of property, its value is for the jury to determine, and the court should not arbitrarily fix its value in the form of verdict."

There is no other argument or reference to the matter, except in the reply argument. But one witness testified as to the value of the hay. This witness was Chick, and it was plaintiff's own evidence. The trial court, in fixing the value at $160, took the lowest estimate of the witness. Of this the defendant does not complain, and we think the plaintiff cannot. Defendant claims that the value of the half of the hay was $240. Chick testifies that, at one time, which we understand appellant to claim was before the replevin, he was offered $24 a ton for the 20 tons. The court seems to have taken the figures at which Chick sold the hay on the market, which Chick says was the highest price he could get at that time. Counsel for appellant, in argument, seems to misapprehend the evidence. In argument, he puts it this way: That witness said he sold all the hay for $183, which would make one half the hay a little over $90. He later quotes the witness as saying that he "sold the hay for $16 to $17 a ton, and, there being 20 tons, it ran to $283;" and that half of this would be $140. All the way through his evidence, witness says there were 20 tons. He does say in his evidence: "I sold the hay for $16 to $17 a ton, and, there being 20 ton, it ran to $283." It may readily be demonstrated that, at either $16 or $17, it would be more than $283. At $16, it would be $320, one half of which would be the amount fixed by the court.

It may be, as appellee contends, that appellant has not complied strictly with the rules in regard to presentation; but we have gone through the record, and attempted to determine all points that seem to be meritorious. We discover no error in the record, and the judgment is—*Affirmed*.

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.