LOWDEN SAVINGS BANK, Appellant, v. L. and L. F. ZELLER et al., Appellees; FRED H. FRAHM et al., Appellants.

**CHATTEL MORTGAGES:  Validity—After-Acquired Property Lien for**
**1, 3 After-Incurred Debts.**  A chattel mortgage on *after-acquired* property to secure *after-incurred* indebtedness is valid, provided that the intention so to do is clear and explicit.

**CHATTEL MORTGAGES:  Index—Description of Property.**  An index
2 to the registration of a chattel mortgage need not describe the incumbered property.

**CHATTEL MORTGAGES:  Foreclosure—Nonwaiver.**  An action to en-
4 join the foreclosure of a chattel mortgage does not *ipso facto* transfer the foreclosure to the district court.

*Appeal from Cedar District Court.*—F. O. ELLISON, Judge.

SEPTEMBER 28, 1923.

REHEARING DENIED DECEMBER 14, 1923.

ACTION to enjoin foreclosure of a chattel mortgage given by defendant Frahm to defendants the Zellers.  The court found the mortgage to be a valid prior lien on all nonexempt property, and that plaintiff was entitled, under its mortgage lien, to the exempt property.  All parties appeal.—*Modified and affirmed*

*on appeal of bank; affirmed on appeals of the Frahms and the Zellers.*

*Johnson, Donnelly & Lynch* and *D. D. McGillivray,* for appellants.

*E. L. Magruder* and *J. C. France,* for appellees.

ARTHUR, J.—Defendant F. H. Frahm was a married man, the head of a family, and a farmer. On June 8, 1918, he executed a chattel mortgage to L. & L. F. Zeller, a copartnership, covering 20 head of two-year old steers, 5 head of heifer calves, 5 head of Shorthorn male calves, 15 cows, 5 horses, and 110 Hampshire pigs about three months old. This mortgage provided:

"It being understood that this mortgage shall also include the increase and all additions that may hereafter be made to the above described; also any other chattels of every nature and kind that I may own and possess on the above described premises or elsewhere in Massillon Township, Cedar County, Iowa, or Cedar County, Iowa, during the time that this mortgage is in force."

The mortgage secured a note of $3,000, therein described, and further provided:

"It being understood that this mortgage shall also include any other indebtedness that I may owe said mortgagees or their assigns during the time that this mortgage is in force."

The wife of F. H. Frahm did not sign this mortgage. The mortgage was recorded on June 11, 1918.

On June 21, 1921, Frahm executed a note in the amount of $1,773, to the First Trust & Savings Bank of Oxford Junction. This note was given in renewal of three notes purchased by the Zellers prior to that date, and was executed to the bank, instead of to the Zellers, by mistake, and was, in August, 1921, indorsed over to the Zellers. The bank, in fact, never owned the note.

On December 16, 1921, defendants Fred H. Frahm and Emma Frahm, his wife, executed to the plaintiff bank their note for $5,000, and to secure said note, the said defendants executed and delivered to plaintiff bank a chattel mortgage upon all the personal property on the farm occupied by them. Said chattel

mortgage was recorded on December 17, 1921. This mortgage covered 4 horses, 12 milch cows, 11 white-faced heifers, 12 spring calves, 75 head of hogs, 32 head of brood sows, 57 head of fall pigs, 1 Hudson automobile, a full line of farm machinery and equipment; also, all corn, hay, and grain; and "also all other personal property hereinafter acquired by mortgagors or either of them and placed or kept on said premises at any time in the life of this mortgage; also, all increase of live stock." The mortgage provided that, "in addition to the note hereinafter described, this mortgage shall also stand as security for all other indebtedness hereinafter owing by mortgagors or either of them to mortgagee."

After the execution of said mortgage, the plaintiff bank loaned Frahm additional sums in the amount of $300.

On January 28, 1922, the Zellers placed their chattel mortgage in the hands of the sheriff of Cedar County for foreclosure, and caused the sheriff to take possession of the following described property as the property of F. H. Frahm, all of said property being covered by plaintiff bank's chattel mortgage, to wit, 75 head of fat hogs, 57 fall pigs, 32 brood sows, all Jersey Reds, 1 thoroughbred Jersey Red boar, 6 two-year-old heifers, 12 cows, 8 calves, 4 horses, 200 chickens, 1,500 bushels of corn, 8 tons of hay, and all farm machinery, and caused the sheriff to give notice of the sale of said property under and by virtue of said chattel mortgage.

I.   On the 9th day of February, 1922, plaintiff bank began this action, alleging that, by virtue of its chattel mortgage, it held a first and paramount lien upon all of the personal property covered by and described in said chattel mortgage, and prayed that defendants the Zellers and B. F. Barclay, sheriff, be enjoined from foreclosing said Zeller mortgage and restrained from proceeding to sell the said personal property. A temporary injunction was granted. Plaintiff bank prayed that, upon final hearing of the cause, it be adjudged that the lien of its mortgage be established as a paramount lien to any interests or liens of the Zellers and the Frahms in and to all of said personal property, and that the Zellers be required to plead any cause of action they claimed to have for the foreclosure of their alleged mortgage lien, and that the interests and rights of the parties

be determined, and that, upon the final trial, the temporary injunction be made permanent, and the defendants enjoined from further proceeding with their foreclosure sale.

By way of affirmative defense, the Zellers alleged that the property taken possession of by them under their chattel mortgage was property covered by the terms of said mortgage; that said mortgage was given to secure the payment of the $3,000 note mentioned in the mortgage; that said mortgage was also given to secure the payment of a certain note executed by the Frahms for $1,773, which note was made after the execution of the mortgage, and on July 27, 1921, and is included in the security of the mortgage by virtue of the clause in the mortgage reading:

"It being understood that this mortgage shall also include any other indebtedness that I may owe such mortgagees or their assigns during the time that this mortgage is in force."

Defendants the Frahms admitted all the allegations of the petition, and joined with plaintiff in praying for the relief asked in the petition. By way of cross-petition against defendants Zellers and Barclay, sheriff, they allege that, subject to the right of plaintiff under its chattel mortgage, F. H. Frahm is the owner of the property described in plaintiff's mortgage; that defendants Zellers have no lien on said personal property; that the mortgage held by the Zellers, under which they are attempting to proceed in foreclosure, has been satisfied by payment to the mortgagee of the proceeds of sale of the property covered by said mortgage; that the property which the Zellers are attempting to sell is not covered by the mortgage given to the Zellers; and that the Zellers' mortgage is not a lien on said property. The Frahms prayed that the plaintiff bank's mortgage be adjudged to be the only mortgage lien upon the personal property which the Zellers are attempting to sell under their mortgage, and that the Zellers and the sheriff be restrained from proceeding to sell said property.

Answering the cross-petition of the Frahms, the Zellers made general denial; admitted that they caused the sheriff to foreclose their mortgage; alleged that any money derived from the sale of any property described in their mortgage, paid by Frahms to them, was applied upon indebtedness due from

Frahm, other than that secured by said mortgage; that such sums of money were so applied with the knowledge and consent of Frahm; that the indebtedness secured by their mortgage is due and unpaid; and that the lien of their mortgage still attaches to the property seized by the sheriff.

II.    Under the issues thus made, the cause was tried. The court found certain property to be exempt to Frahm, and that the mortgage given by Frahm and his wife to the plaintiff bank covered their exempt property and other property; that the Zeller mortgage, not being signed by Emma Frahm, wife of F. H. Frahm, was not a lien upon exempt property; that, as to the exempt property, the mortgage lien of the plaintiff bank was prior and superior to the mortgage of the defendants, Zeller & Zeller, and covered 5 brood sows, 2 cows, 2 calves, 2 horses, about 200 chickens, certain grain and hay, and the farm machinery; and also that the mortgage held by plaintiff bank was a superior lien to the Zeller mortgage on the "57 fall pigs," held to be exempt property; that the Zeller mortgage was a valid lien on the balance of said property taken by the sheriff; and that said lien was prior to and superior to plaintiff's chattel mortgage and to any claim or interest which the defendants Frahms may have therein. The court further found that the mortgage given by F. H. Frahm to Zeller & Zeller was given to secure the payment of the $3,000 note mentioned in the mortgage, and also the $1,773 note executed by Frahm on July 27, 1921, and owned by Zeller & Zeller. Judgment was rendered against F. H. Frahm and Emma Frahm in favor of plaintiff bank on the note for $5,000 mentioned in the mortgage of the Frahms to it. It was decreed by the court that the Zeller mortgage was a prior lien on all the property involved, except property found to be exempt. The temporary injunction was dissolved, except as to the property found to be exempt, from which judgment and decree plaintiff bank and defendants Frahm and Frahm have appealed. Also defendants the Zellers appeal from the holding of the court that the 57 fall pigs were exempt property, claiming that said pigs were not under six months of age when seized under the chattel mortgage.

III.    We will first consider the issues between appellant bank and appellees the Zellers on the appeal of appellant bank.

The most important questions involved in this appeal are: Are appellees the Zellers entitled to a lien prior and paramount to the lien of appellant bank upon after-acquired property and for after-incurred indebtedness? That is, which of said parties has a superior lien upon the personal property acquired by Frahm after the execution by Frahm of the mortgage to the Zellers? Is the $1,773 note executed by Frahm after the Zeller mortgage was given secured by the said Zeller mortgage? Is the indebtedness represented by said mortgage a lien prior to the mortgage given by Frahm to appellant bank?

Other questions raised are as to whether the recording of the Zeller mortgage and indexing thereof imparted constructive notice to appellant bank of the claimed lien on the after-acquired property, and whether, the foreclosure instituted by the Zellers by notice and sale having been transferred to the district court, under the provisions of the statute, and the Zellers not asking, in the district court, foreclosure of their mortgage, they were entitled to any relief.

IV. It is urged by appellant bank that it is not charged with constructive notice of the chattel mortgage given to appellees the Zellers, particularly in so far as the Zeller mortgage purports to cover after-acquired property.

1. CHATTEL MORT-GAGES: validity: after-acquired property lien for after-incurred debts. The facts disclosed by the record relative to this point are that practically all of the property covered by the Zeller mortgage which was owned by the mortgagor in 1918, when the Zeller mortgage was given, had been disposed of at the time appellant bank received its mortgage. The exact proposition involved is well illustrated by the facts disclosed in evidence with reference to the hogs owned by Frahm when the Zeller mortgage was executed, and afterwards, when appellant bank's mortgage was executed. When the Zeller mortgage was given, Frahm owned a drove of Hampshire hogs, which was described and covered by the Zeller mortgage. Afterwards, but some time before the plaintiff bank was given its mortgage, Frahm sold all of his drove of Hampshire hogs, in 1921, and acquired a drove of red hogs. The mortgage to plaintiff bank was upon said red hogs.

Now the question is, Was the plaintiff bank charged with constructive notice that the mortgage covering Hampshire hogs,

given in 1918, was a lien upon the red hogs acquired in 1921?

It is conceded by counsel for appellant bank that the inclusion of after-acquired property, as between the parties to the mortgage, is binding; but they strenuously urge and ably argue that appellant bank, as. a subsequent purchaser or mortgagee, is not charged with constructive notice of the lien of the Zeller mortgage, as to such after-acquired property.

It appears without dispute that all of the property involved was kept on the same farm; that all of the increase and all of the additions or after-acquired property referred to in the Zeller mortgage were kept on the same farm, down to and including the time of the trial. The drove of Hampshire hogs was disposed of, and a drove of red hogs acquired by Frahm, some time before he executed the mortgage to appellant bank, and this is true as to some of the horses and cattle levied upon under the Zeller mortgage. All of the after-acquired property and the increase was in being and in the possession of Frahm before the mortgage to appellant bank was executed. All of the property levied upon by Zellers under their mortgage, including the increase and the after-acquired property, was in being and in possession of Frahm as early as August, 1921, some months prior to the execution of appellant bank's mortgage, on December 16, 1921. We think that, when Frahm purchased the after-acquired property in controversy, some. months before appellant bank's mortgage was executed, and placed it on his farm, said property came under the Zeller mortgage by its terms as to after-acquired property, and said mortgage ceased to be an executory contract as to said property, and became fully executed. In *In re Thompson*, 164 Iowa 20, we said:

"In this state, the doctrine has been adopted that, in cases of stocks of goods, a party may, by express terms, mortgage, and his mortgage may be made to cover, not only the stock then in existence, but additions and substitutions thereafter made in the ordinary course of business; and this is the doctrine in many of the states. But the intention to do so must be clearly expressed in the mortgage, so as to charge persons. dealing with the stock with notice of that fact."

We think that, by the express terms of the Zeller mortgage, it was clearly intended by the parties to cover the after-

acquired property. The clause relating to after-acquired property is:

"It being understood that this mortgage shall also include the increase and all additions that may hereafter be made to the above described; also, any other chattels of every nature and kind that I may own and possess on the above described premises * * * in * * * Cedar County, Iowa, during the time that this mortgage is in force."

In *Live Stock Nat. Bank v. Julius,* 187 Iowa 748, we said:

"It has long been the settled law of this state that subsequently acquired property may be included in a chattel mortgage given to secure an existing indebtedness."

We reach the conclusion that the Zeller mortgage was a valid lien on the after-acquired hogs, horses, cattle, etc., in controversy, except the exempt property. This holding has ample support in our cases. *Scharfenburg v. Bishop,* 35 Iowa 60; *Thompson v. Anderson,* 94 Iowa 554; *In re Thompson,* supra; *Live Stock Nat. Bank v. Julius,* supra.

V. In this connection, we may notice the contention of appellant that the indexing of the Zeller mortgage was insufficient to constitute constructive notice as to after-acquired

2. CHATTEL MORT-GAGES: index: description of property.

property. The particular point sought to be made by appellant is that the indexing of the mortgage did not contain a sufficient description of the property, the description being: "20 head of steers, 2 cows, 4 horses, 110 pigs." The indexing of the mortgage shows, under appropriate columns, the name of the mortgagor, the name of the mortgagee, the date of the filing of the instrument, the date of the instrument, the nature of the instrument; and the book and page where the same is recorded. We fail to find that any requirement of the statute, Code Section 2907, was not complied with. This section does not require the setting out in the index of the description of the property or any reference thereto.

VI. Appellant insists that the lower court was in error in

3. CHATTEL MORT-GAGES: validity: after-acquired property lien for after-incurred debts.

holding that the note for $1,773, executed by Frahm and acquired by the Zellers after the Zeller mortgage was executed, should be included in the Zeller mortgage lien. Appellant urges

that such inclusion is wrong because there is no showing that
such after-incurred indebtedness was in any manner con-
templated by the parties at the time the Zeller mortgage was
made. It is true that, at the time the Zeller mortgage was exe-
cuted, the indebtedness represented by the $1,773 note was not
mentioned by either party. The loans represented by the notes
for which the $1,773 note was given in renewal were advanced
long prior to the execution of the mortgage to appellant bank,
and the said renewal note, the $1,773 note, was owned by the
Zellers prior to the execution of appellant bank's mortgage.
We think the language of the Zeller mortgage is sufficiently def-
inite to put appellant bank upon inquiry, and to enable it to
ascertain the exact amount of indebtedness secured thereby.
The language is:

"It being understood that this mortgage shall include any
other indebtedness that I may owe said mortgagees or their as-
signs during the time this mortgage is in force."

We think that said clause answers the contention of appel-
lant bank. While the record does not disclose that the particu-
lar indebtedness represented by the $1,773 note was mentioned
by either party at the time the Zeller mortgage was executed,
the above quoted clause, we think, clearly indicates that the
parties had in mind the after-incurred indebtedness of Frahm,
to be included in the mortgage; and it especially mentions "their
assigns." We think said clause is an agreement in contempla-
tion of just such a transaction as actually occurred with respect
to the said $1,773 note.

Furthermore, in the instant case, the record shows that the
firm of L. & L. F. Zeller was composed of L. F. Zeller and his
father, L. Zeller; that L. F. Zeller was the cashier of the First
Trust & Savings Bank of Oxford Junction, Iowa, and that he
was the officer in active charge of the management of said bank;
that he was also the active member of the firm of L. & L. F.
Zeller. F. H. Frahm testified:

"In my dealings with the First Trust & Savings Bank, I
always dealt with Mr. Zeller. I did not know the bank was
carrying paper I signed. I always went to Zeller when I bor-
rowed money."

The note in controversy, for $1,773, was executed by Frahm

in renewal of three notes which he had executed to the First Trust & Savings Bank, and which had been transferred to the Zellers by the bank. So it appears that Frahm actually negotiated the loans represented by the $1,773 note through Zeller, cashier of the bank, and Frahm thought he was making the loans and receiving the money directly from the Zellers, with whom he had agreed in the Zeller mortgage that:

"It being understood that this chattel mortgage shall also include any other indebtedness that I may owe said mortgagees or their assigns during the time this mortgage is in force."

We reach the conclusion that the language of the Zeller mortgage is sufficiently definite to include the note for $1,773 within the lien of the mortgage, and to put the appellant bank upon inquiry, and to enable it to ascertain the exact amount of the indebtedness secured thereby. Supporting, see *Magirl v. Magirl*, 89 Iowa 342; *First Nat. Bank v. Reid*, 122 Iowa 280; *Googins v. Gilmore*, 47 Me. 9 (74 Am. Dec. 472); *McDaniels v. Colvin*, 16 Vt. 300 (42 Am. Dec. 512); *Ackerman v. Hunsicker*, 85 N. Y. 43, 45 (39 Am. Rep. 621).

VII. Appellant bank complains that the trial court erred because judgment was entered in its favor against defendants for only the original loan of $5,000 mentioned in the mortgage, and that judgment was not entered on a $300 note executed by the Frahms afterwards for additional loans. The mortgage to plaintiff bank provides that "it shall stand as security for all other indebtedness hereinafter owing by mortgagors to mortgagees." We can see no reason, and none is pointed out, why judgment was not entered for the $300 in loans advanced after the execution of the mortgage. We think it must have been an oversight. Unquestionably, under the record, appellant bank was entitled to personal judgment against the Frahms for said $300 loan. Accordingly, the judgment entered in the lower court in favor of appellant bank and against appellants Frahms is modified and increased so as to include judgment for said $300 and interest.

VIII. This suit was instituted by appellant bank to enjoin the Zellers from foreclosing their mortgage and selling the property thereunder by notice and sale, and appellant bank claims that said foreclosure proceeding was thereby, under

4. CHATTEL MORT-
GAGES: fore-
closure: non-
waiver.

Code Section 4283, transferred to the district court for foreclosure, and that the Zellers were then obliged to proceed with their foreclosure in the district court, and to ask whatever affirmative relief they were entitled to in the district court; and that, not having asked relief other than that the action of appellant bank be dismissed and the temporary injunction dissolved, the Zellers are precluded from asserting any right to foreclose their mortgage by notice and sale. We think appellant bank's position not tenable. In the instant action, the indebtedness due the Zellers under their mortgage was contested, and the court found the amount due the Zellers, and established the Zeller mortgage as a superior lien upon all of the nonexempt property, and dissolved the injunction as to all such property. The Zellers might, by cross-petition, have asked foreclosure of their mortgage in the district court, but we think they would not be obliged to do so.

IX. The questions presented on the appeal of Frahm and Frahm are whether the chattel mortgage indebtedness to the Zellers had been satisfied, as claimed by them, whether the $1,773 note should be and is included in the indebtedness secured by the Zeller mortgage, and whether the court erred in not holding the mortgage of appellant bank to be a lien superior to the lien of the Zeller mortgage on all of the property involved.

Whether the indebtedness of Frahm to the Zellers has been satisfied, as claimed by Frahm, is a question of fact, which was determined by the lower court adversely to Frahm. We have examined the evidence bearing on this question of fact, and find no reason to disturb the finding thereon of the lower court.

In the appeal of appellant bank, we have already considered the question as to the note for $1,773, and held that it is included in the indebtedness secured by the Zeller mortgage. Also, we have hereinbefore passed upon the question, and held the Zeller mortgage to be a valid lien and superior to the lien of appellant bank's mortgage upon all of the property involved, except the exempt property.

X. The appeal of the Zellers involves the question of whether the 57 fall pigs in controversy were six months old or under, at the time the Zellers caused them to be seized under

their chattel mortgage. We find no reason to disturb the finding of the lower court. We think the finding is correct.

Results in affirmance on appeal of appellant bank, except modification by increasing the judgment entered in favor of the bank against the Frahms, so as to include judgment on the $300 note, as mentioned in Division VII of this opinion; affirmance on appeal of the Frahms; and affirmance on appeal of the Zellers.—*Modified and affirmed on appeal of bank; affirmed on appeals of Frahms and Zellers.*

PRESTON, C. J.*, EVANS and FAVILLE, JJ., concur.