RUDY JOHNSON et al., Appellees, v. GUST TURNHOLT et al., Appellants.

**CHATTEL MORTGAGES:** Construction and Operation—"Increase" and "Acquisitions." A chattel mortgage on specifically described swine, "together with all increases, together with additions, acquisitions, and purchases of similar kind and description," covers (between the mortgagor and the mortgagee) (1) the increase of swine *subsequently* purchased, and (2) the increase of the increase of swine

*subsequently* purchased, both because such increase is within the broad clause "all increases" and because such increase constitutes an "acquisition."

**EVIDENCE:** Parol As Affecting Writings—Absence of Talk Concern-
2　ing Property Covered by Mortgage. A chattel mortgage which covers not only specifically described stock, but, in effect, "all increases, additions, and acquisitions" of similar stock, may not be in any manner affected by testimony that the mortgagor and the mortgagee had never had any "*talk*" about the mortgage's covering any stock except the stock specifically described.

**CHATTEL MORTGAGES:** Lien—Nonwaiver by Failure to Make Claim
3　in Bankruptcy. A chattel mortgagee of *exempt* property does not lose his lien by failing to make claim to such property in bankruptcy proceedings against the mortgagor; the bankruptcy court having no jurisdiction whatever over such property, except to determine that it is in fact exempt, and to exclude it from the bankrupt's assets.

Headnote 1: 11 C. J. p. 502. Headnote 2: 22 C. J. p. 1135. Headnote 3: 7 C. J. pp. 362, 363.

*Appeal from Buena Vista District Court.*—F. C. Davidson, Judge.

May 12, 1925.

Action in replevin by the mortgagees, to recover certain live stock claimed to be covered by a chattel mortgage. Upon a trial to the court, there was a judgment for the plaintiffs, from which defendants appeal.—*Affirmed.*

*Baker & Doran, Bailie & Edson,* and *Orville B. Rogers,* for appellants.

*Whitney & Whitney* and *C. E. Pendleton,* for appellees.

Vermilion, J.—I. The claim of the plaintiffs, appellees, to the property in question is bottomed upon a chattel mortgage. One question in the case is whether the property taken under
the writ of replevin was covered by the chattel mortgage. The facts are not in serious dispute. The question turns upon the construction of the chattel mortgage.

1. CHATTEL MORT-
GAGES: construction and operation: "increase" and "acquisitions."

The mortgage was executed on May 18, 1920, and describes particularly certain specific live stock and personal property, including "2 Hampshire sows and 1 Chester White sow, 13 winter pigs, mixed Chester White and Hampshire, and 12 spring pigs, mixed Chester White and Hampshire pigs." It contains the further provision:

"The above property is now located as follows: [describing certain land]. Being all the property of the kind and description named now owned by me together with all increases, together with additions, acquisitions and purchases of similar kind and description."

The property as described in the petition herein, filed January 31, 1923, so far as in controversy here, consists of 5 sows, 35 spring pigs, and 35 fall pigs.

It is clearly established by the evidence that all hogs described in the mortgage were sold, long prior to the commencement of this action; that thereafter, the mortgagor purchased other hogs; that none of the hogs so purchased are among those now in controversy; but that the latter are either "the increase or the increase of the increase" of those so purchased. The controversy is between the parties to the mortgage, and there is no question of the sufficiency of the description to impart notice to subsequent purchasers. The question is whether the description is sufficient to cover the hogs in question, as between the parties.

It is not disputed that subsequently acquired property may be covered by a chattel mortgage. *Live Stock Nat. Bank v. Julius,* 187 Iowa 748; *National Bank of Milton v. O'Brien,* 196 Iowa 865; *Lowden Sav. Bank v. Zeller,* 196 Iowa 1205. Nor that a mortgage upon animals and their increase covers the increase. *Thompson v. Anderson,* 94 Iowa 554.

It is not questioned that the mortgage covered the hogs owned by the mortgagors at the time of its execution, and the increase of such hogs, or that it covered all hogs subsequently purchased; but it is contended that it did not cover the increase of the hogs subsequently purchased.

The mortgage covered certain described property, expressly stated to be all the property of the kind and description owned by the mortgagor, "together with all increases, together

with all additions, acquisitions and purchases of similar kind and description." The appellants' contention must find support, if at all, in the order in which the words are used. If the words "all increases" followed the words "additions, acquisitions and purchases," there could be no question, we think, that the increase of subsequent purchases would be covered. But the language used is, "together with all increases." Increases of what? The property specifically described in the mortgage, or all the property covered by the mortgage? It is not expressly or by necessary implication limited to the increase of the described property. It is "all increases;" and this, we are of the opinion, included the increase of all property covered by any provision of the mortgage, whether specifically described or not, and in whatever provision found. Furthermore, the mortgage expressly covers "additions, acquisitions and purchases." Whether the hogs in question could be said to be "additions," or whether that term must be considered as meaning additions to those specifically described, we need not determine. *Live Stock Nat. Bank v. Julius,* supra. An acquisition is that which is acquired or gained. Century Dictionary. They were certainly acquisitions in that sense,— they were acquired or gained by the mortgagor. The property covered by the mortgage is to be ascertained from the mortgage considered as a whole. It covers all increases and all acquisitions. An intention to cover all property of the given kind and character subsequently owned by the mortgagor, no matter how obtained, is, we think, clearly expressed. *In re Assignment of Thompson,* 164 Iowa 20; *Lowden Sav. Bank v. Zeller,* supra. As between the parties to the instrument, the court correctly held that the property in question was covered by the mortgage.

II. Complaint is made that the court refused to permit appellants to show (quoting their offer) "that no conversation was ever had between the witness [one of the appellants] and any other person, or in his hearing between any persons, either before or subsequent to the giving of this mortgage up until the replevin in this action, that the mortgage was to cover anything other than the property described in the mortgage, and nothing said in any of such conversation with

2. EVIDENCE: parol as affecting writings: absence of talk concerning property covered by mortgage.

reference to the mortgage, covering additions, acquisitions, or increase.'' It is clear that there was no error here. The offered testimony would have been a plain violation of the parol-evidence rule. *Blumer v. Schmidt,* 164 Iowa 682. ·

III.  The note secured by the mortgage had been renewed, and the time extended. This did not operate to discharge the mortgage, in the absence of an agreement to that effect, but it continued in force, as security for the renewal note. *Cook v. Gilchrist,* 82 Iowa 277.

IV.  The appellant Gust Turnholt, the owner of the property, was adjudged a bankrupt, and the property in question was set off to·him as exempt to the head of a family, by the bankruptcy court. The mortgage covered other property not exempt, as we understand the record. The appellees filed a claim on the note in the bankruptcy proceedings as a preferred claim, and received a dividend. It is claimed that this gave the bankruptcy court jurisdiction over the subject-matter, and that the rights of the parties ·were determined in that proceeding, and that, by failing to make claim to the exempt property in that court, they waived their right to a lien.

3. CHATTEL MORT-
GAGES: lien:
nonwaiver by
failure to make
c'aim in bank-
ruptcy.

''A court of bankruptcy has jurisdiction to determine the merits of the bankrupt's claim to exemptions, but, as a rule, has no jurisdiction over the property claimed, except to set it aside for his use.'' 1 Collier on Bankruptcy (12th Ed.) 205.

''As soon as the right of the bankrupt to the exemptions claimed is determined, the court's jurisdiction over the exempt property ceases. The bankruptcy court has no further control over it. The court has no power to administer or distribute it, with other assets of the bankrupt estate.'' Ibid 206.

It was held in *Lockwood v. Exchange Bank,* 190 U. S. 294 (47 L. Ed. 1061), that the bankruptcy court has no jurisdiction to enforce against the exempt property the rights of creditors who, by reason of a waiver of exemptions in the evidence of their indebtedness, had a right, under the state law, to proceed against it; and that the discharge of the bankrupt would be withheld to allow a reasonable time for the creditor to assert, in a state tribunal, his right to subject the exempt property to the

satisfaction of his claim. The following was quoted with approval from *In re Bass*, 3 Woods 382 (Fed. Cas. No. 1091).

"In other words, it is made as clear as anything can be, that such exempted property constitutes no part of the assets in bankruptcy. * * * The exemption is created by the state law, and the assignee acquires no title to the exempt property. If the creditor has a claim against it, he must prosecute that claim in a court which has jurisdiction over the property, which the bankrupt court has not."

It was further said:

"The fact that the act of 1898 confers upon the court of bankruptcy authority to control exempt property in order to set it aside, and thus exclude it from the assets of the bankrupt estate to be administered, affords no just ground for holding that the court of bankruptcy must administer and distribute, as included in the assets of the estate, the very property which the act in unambiguous language declares shall not pass from the bankrupt, or become part of the bankruptcy assets."

The discharge in bankruptcy does not extinguish the lien of a judgment upon exempt property not a part of the bankrupt estate, but only so far as concerns the bankrupt's personal liability. *Gregory Co. v. Cale,* 115 Minn. 508 (133 N. W. 75). In *Northern Shoe Co. v. Cecka,* 22 N. D. 631 (135 N. W. 177), where property subject to attachment for the purchase price was set aside by the bankruptcy court as exempt, it was held that the creditor's right to proceed against it was not lost by filing his claim in the bankruptcy court.

The bankruptcy court has no jurisdiction to order a sale of exempt property for the benefit of a mortgagee thereof. *In re Hatch,* 102 Fed. 280. The appellees could enforce their claim to the nonexempt property covered by the mortgage only in the bankruptcy court, and this they did. The bankruptcy court had no jurisdiction over the exempt property, except to set it aside for the use of the bankrupt; but it was still subject to the lien of the mortgage.

We find no error, and the judgment is—*Affirmed.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.