H. O. CHAMBERS et al., Appellants, v. FIRST STATE BANK & TRUST COMPANY of Fort Dodge; L. A. ANDREW, Superintendent of Banking, Appellees.

No. 42190.

APRIL 3, 1934.

Frank W. Senneff, for appellants.

D. M. Kelleher, for appellees.

KINDIG, J.—H. O. Chambers and Sarah A. Chambers, husband and wife, are the plaintiffs-appellants in this case. They operate a farm in Kossuth county, Iowa. The husband, during the operation of the farm, became indebted to the defendant-appellee, First State Bank & Trust Company of Fort Dodge, Iowa. This indebtedness was evidenced from time to time by promissory notes. Each note was secured by a chattel mortgage on the appellants' personal property kept upon the farm.

On May 1, 1930, the appellants executed to the bank a note for $11,588.46. To secure that note, the appellants executed to the bank a chattel mortgage on their personal property. It appears that the mortgage specifically exempted certain personal property. Thereafter, on October 16, 1930, the indebtedness was renewed. When thus renewing the indebtedness, the appellants executed to the bank a new chattel mortgage on their personal property. As was the case in the first chattel mortgage, this second mortgage reserved certain exemptions.

Again on January 23, 1931, the appellants executed to the bank an additional chattel mortgage to secure the indebtedness. Such additional mortgage likewise contained a provision exempting certain of the personal property. Finally, on October 16, 1931, the appellants, in order to secure an indebtedness of $13,900, executed to the bank the chattel mortgage in question. Through this chattel mortgage, the appellants gave the bank security as follows: 31 cows, mostly Shorthorns; 1 bull; 32 steers coming 2 years old; 20 heifers coming 2 years old; 30 calves; 55 brood sows; 400 spring pigs; 2 boars; 120 fall pigs; 200 chickens; 21 horses as follows; 1 black

gelding 15 years old, 1,900 pounds, 1 white mare, 15 years old, weight 1,500 pounds; 1 bay gelding, 14 years old, weight 1,300 pounds; 1 sorrel mare, 13 years old, weight 1,300 pounds; 1 black horse, 10 years old, 1,400 pounds; 1 brown gelding, 21 years old, weight 1,500 pounds; 1 bay gelding, 21 years old, weight 1,500 pounds; 1 bay mare, 13 years old, weight 1,200 pounds; 1 black gelding, 12 years old, weight 1,300 pounds; 1 black gelding, 11 years old, weight 1,300 pounds; 1 sorrel mare, 13 years old, weight 1,400 pounds; 1 black mare, 13 years old, weight 1,600 pounds; 1 black mare, 12 years old, weight 1,100 pounds; together with all increase of live stock of every description now on said farm; 6,000 bushels of oats in granaries; 700 tons ensilage now in silos; all corn raised in 1931, either in cribs or in field. Also three-fourths of all crops raised during the season of 1932 on the North Half of section 11, and the Northwest Quarter of section 12, and the West Half of the Northeast Quarter and East Half of the Northwest Quarter of section 1, and the Southwest Quarter of section 1, all in Township 94, Range 27, Kossuth county, Iowa; 10 sets of harness and collars; 12 wagons; also 3 wagon boxes, 3 feed racks, 4 hayracks; 1 1928 model Chevrolet coupe, motor No. 4863315; 1 1927 Ford coupe, motor No. 10763281; 3 portable chicken houses, 8x12; 13 individual hoghouses, 5x6; 6 individual hoghouses, 7x18; 27 feed bunks; 1 self-feeder; 6 wooden water tanks; 3 steel water tanks; 2 John Deere manure spreaders; 1 Aultman-Taylor threshing outfit complete; also all personal property of every description, except that covered by legal exemptions.

It will be seen, therefore, that there are three groups of property described in the mortgage before the phrase at the end of the description reading as follows: "*Also* all personal property of every description except that covered by legal exemptions." (Italics supplied.) The first group of property includes live stock, "together with all increase * * * of every description". In the second group, following the live stock group, the parties have described oats, ensilage, corn, and crops. Then in the third group, following the group just described, the parties named harnesses, wagons, feed racks, hayracks, automobiles, portable chicken houses, individual hoghouses, feed bunks, self-feeder, water tanks, manure spreader, and threshing outfit. After thus grouping the property specifically described, as above indicated, the parties then placed in the mortgage a clause commencing with the word "also". By that clause, the

parties evidently intended to make an additional inclusion of property in the mortgage. About this, however, there is a dispute.

On the one hand, it is contended by the appellants that the phrase last named must be so read with the preceding groups of property that all exempt properties shall be excluded from the mortgage; while, on the other hand, it is contended by the appellees that the increase of the hogs, although exempt, are covered by the mortgage because of the phrase at the end of that group, to wit: "together with all increase of livestock of every description now on said farm." At this juncture, it is argued by the appellees that the phrase at the end of the three groups, commencing with the word "also", constitutes in fact a fourth group of property covered by the mortgage. Within the fourth group, the appellees argue, is all the personal property of the appellants not included in the first three groups.

The district court found in favor of the appellees, and entered judgment accordingly. An appeal from that judgment was taken by the appellants. Some time after the execution of the mortgages, and before the commencement of this suit, the appellee First State Bank & Trust Company of Fort Dodge, Iowa, commenced to operate under chapter 156, Acts of the Forty-fifth General Assembly, Regular Session, and the appellee L. A. Andrew, state superintendent of banking, was duly appointed the manager for the said First State Bank & Trust Company, under said chapter 156.

I.    There is no dispute over the existence of the mortgage. It is conceded by the appellants that they executed the instrument. No claim is made that the debt secured thereby has been paid or that the property sought by the appellees is not necessary to satisfy the obligation. As a matter of fact, the only controversy relates to whether the mortgage covers the increase of the hogs named therein. If the mortgage does thus include such increase, then the judgment of the district court is correct. But if the mortgage does not thus cover such increase, then the judgment of the district court must be reversed. As before indicated, it is contended by the appellants, on the one hand, that the sentence following the three preceding groups of property, commencing with the word "also", must be so read with the preceding groups of property that all exempt properties shall be excluded from the mortgage; while it is argued by the appellees, on the other hand, that the increase of the hogs, although exempt, are expressly covered by the mortgage because of the phrase at the end

of that group, to wit: "together with all increase of livestock of every description now on said farm". To put the thought differently, the fourth group of property covered by the mortgage is described within the following sentence: "Also all personal property of every description except that covered by legal exemptions." The phrase of this sentence, to wit, "except that covered by legal exemptions", is used by the appellants as a basis for the contention that by reference such phrase modifies each group of property previously named in the mortgage. Consequently, as a result of such implied modification, it is said by the appellants that all the property was mortgaged except that which is exempt. A careful study of the mortgage will reveal the weakness in the appellants' argument. Each group of property named in the mortgage is treated separately by the terms of the mortgage. So the phrase, "except that covered by legal exemptions", in the sentence relied upon by the appellants, refers only to the property described in the mortgage under the fourth group. That phrase thus relied upon by the appellants has no reference to the other three groups of property named in the mortgage. According to the terms of the mortgage relating to the first group, it is apparent that the increase of the hogs contained in that group, now under consideration, is especially covered by the mortgage. After specifically describing the personal property in group 1, above named, there is then added the phrase, "together with all increase of live stock of every description now on said farm."

Nevertheless, it is said by the appellants that the mortgage is ambiguous, and, because it is ambiguous, there must be applied, when arriving at its true meaning, certain rules of construction. It is our opinion that the mortgage is not ambiguous, but rather it is plain and definite in its terms. Assuming that the mortgage is not ambiguous, of course, the rules of construction contended for by the appellants do not apply. Although the rules of construction above named are not to be applied, we have, nevertheless, given the appellants' argument in this regard full consideration, and it is apparent that, even if this were a case where such rules could be applied, such application nevertheless would not change the result.

First, it is argued by the appellants that the parties entered into a stipulation of settlement under which the appellees granted to the appellants certain exempt property. In view of the fact that the appellees conceded some exemptions to the appellants in that stipulation of settlement, it is argued by them that the mortgage must have

been construed by the appellees and the appellants as authorizing such exemptions. This conclusion has no support in the record. By express terms, it is apparent that the mortgage does cover certain exempt hogs; for instance, the fall pigs named in the mortgage are clearly exempt. Even though those pigs were exempt, nevertheless, regardless of the exemption, they were, as a matter of fact, expressly covered by the mortgage. The stipulation of settlement referred to by the appellants was entered into by the parties for the purpose of avoiding the foreclosure of the chattel mortgage. Throughout that stipulation, it is very evident that the parties were not construing the chattel mortgage. They were making concessions to avoid a foreclosure. It is expressly stated in the stipulation of settlement that the property delivered to the appellants by the appellees, were it not for the stipulation, might be covered by the mortgage.

Second, it is contended by the appellants that the mortgage was written by the appellees, and therefore must be construed more strongly against them than if it had not thus been written. Assuming, as a general proposition, that an instrument written by one party may be construed against him, yet even the application of this rule to the mortgage in question, under the assumption, will not change the result. The terms of the mortgage are so plain that, even when construing it under this rule of construction, it is self-evident that the appellees have a lien on the increase of the hogs, according to the express terms of the mortgage. By no rule of construction can a contract be made for the parties which they themselves did not make. When a mortgagor and a mortgagee have entered into a plain contract, the rules of construction will not make some other or different contract. There is nothing to indicate, in the stipulation of facts on which this case was tried, that the appellants did not understand each and every term of the mortgage. In any event, the application of this rule only would require that the description of the mortgage covering the fourth group named therein would be construed more strongly against the appellees. This would mean no more than that the exempt property of the fourth group would not be covered by the mortgage. It would have no reference to the exempt property covered by the previous three groups. Under all the circumstances, therefore, it cannot be said that this rule of construction requires that the increase of the hogs expressly covered by the mortgage must be declared free therefrom.

Third, it is said that the clause designated above as the fourth

group, which is the all-inclusive phrase, was typewritten and therefore must be given precedence over the printed portion of the mortgage. Of course, if the mortgage were ambiguous, this rule of construction would have its place. But, assuming that such rule of construction is to be considered, the previous provision of the mortgage giving the appellees a lien on the increase of the hogs would not be overcome by this all-inclusive phrase below. According to the arguments of counsel, the provision in the mortgage giving the appellees a lien on the increase of the live stock was in writing. Consequently, the typewritten portion would have no precedence over the written portion of the mortgage.

On the other hand, it occurs to us that the appellants' argument at this place defeats their own cause. Conceding that the phrase to which they refer is typewritten and therefore must be given special significance, the result would be that it was emphasized by the parties that additional personal property should be included in the mortgage. In no event can it be said that by giving emphasis to this all-inclusive clause something is subtracted from the other provisions of the mortgage. This clause is not in the nature of a subtraction, but rather its purpose was to accomplish an addition to the property otherwise included in the mortgage. As here used, the word "also" indicates "in addition to". 2 Corpus Juris, p. 1164; Henne v. Summers, 16 Cal. App. 67, 116 P. 86, loc. cit. 88.

Although it is true that exemption statutes are to be given liberal construction, yet that rule has application to statutes and not to contracts. When, as in the case at bar, the contract is unambiguous, no rule of construction can defeat the intent of the parties when making the contract. Rules of construction, as before said, have application only when there is ambiguity. Because there is no ambiguity here, there is no place for the rules of construction; but, as before explained, even under the rules of construction the appellants would not be aided. The mortgage provided that the appellees were to have a lien upon the increase of the live stock. So, although certain exemptions were especially reserved in a previous mortgage, this fact does not change the result in the present mortgage where the parties, contrary to what they had done before, here provided for no exemptions so far as the increase of the live stock is concerned. Such a provision for a lien on the increase of named live stock is enforceable, and, when the live stock is born, so far as the appellants are concerned, the appellees are entitled to their lien.

Thompson v. Anderson, 94 Iowa 554, 63 N. W. 355; Hopkins Fine Stock Co. v. Reid, 106 Iowa 78, 75 N. W. 656; In re Assignment of Thompson, 164 Iowa 20, 145 N. W. 76, Ann. Cas. 1916D, 1210; National Bank of Milton v. O'Brien, 196 Iowa 865, 195 N. W. 611; Johnson v. Turnholt, 199 Iowa 1331, 203 N. W. 715. As said in Thompson v. Anderson, supra, reading on page 558:

"The general rule in other states no doubt is that a chattel mortgage will not cover personal property which has no actual or potential existence. But it is well settled in this state that a valid mortgage may be given on personal property not owned by the mortgagor, and not then in existence, if he afterwards acquire it. * * * We think the mortgage covered the hogs in question (where the mortgage provided for a lien on the increase of the hogs named therein), and that the court properly overruled the defendant's motions."

A third party is not involved here. No one here is involved except the mortgagor and the mortgagee. Consequently, as between them, the mortgage is valid on the increase of the hogs named therein, and the appellees' lien thereon is hereby established. Accordingly the judgment of the district court is amply sustained by the record.

II. An argument is advanced by the appellants on the theory that the district court wrongfully taxed the costs. When assessing the costs, the district court let them follow "the event of the action" and assessed the same to the appellants, who were unsuccessful. See section 12694 of the 1931 Code. These costs, according to the appellants' argument, cover the "costs of" the appellees' "pleadings". According to the stipulation and agreement of facts, this action was commenced pursuant to chapter 547 of the 1931 Code. After the action was thus commenced, pleadings were filed and "issues joined between the parties".

It is said by the appellants that, because, after the parties had thus filed their pleadings and raised their issues, they then entered into a stipulation setting forth the facts and the issues, they thereby abandoned the original pleadings and tried the cause on the issues of fact and issues of law raised by the stipulation. Although the parties thus entered into such stipulation, there was no agreement anywhere concerning the costs of the action. So, under section 12694 of the 1931 Code (a section under chapter 547 of the Code), no agreement having been made "as to the costs, they shall follow the event of the action, and be recovered by the successful party." The

appellees were the successful parties. Consequently, because the appellants were the unsuccessful parties, the costs under the statute were properly assessed to them. This is the basis on which the district court assessed the costs, and we are inclined to the view that it properly taxed them.

Wherefore the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

CLAUSSEN, C. J., and EVANS, ALBERT, and DONEGAN, JJ., concur.

MITCHELL, J., takes no part.