IN RE ESTATE OF WILL MURDOCH.

LILLIAN MARSH MURDOCH, Applicant, Appellant, v. ARCHIE CARSON et al., Appellees.

No. 47037.

OCTOBER 14, 1947.

Lappen & Carlson, of Des Moines, and M. J. Carey, of Newton, for appellant.

Cross & Hamill, Timothy J. Campbell, and Hugo Schulz, all of Newton, for appellees.

HAYS, J.—Will W. Murdoch died testate on November 20, 1945. His executor filed an inventory in which he listed as assets of the estate a checking account of $16,665.95 in the Jasper County Savings Bank and one of $2,684 in the Newton National Bank. The surviving spouse, Lillian Marsh Murdoch, filed objections thereto, claiming same were joint accounts with right of survivorship. Archie Carson, a residuary legatee, appeared and

asked that the inventory be confirmed. The trial court rejected the claim of joint account with right of survivorship and approved the accounts as assets of the estate. From such order in probate the objector appeals.

The trial court in its finding of facts found that there was no intention upon the part of either decedent or appellant to create such an account.

The record discloses the following: Will Murdoch had for many years conducted a funeral home, being assisted by his wife, appellant. They had no children. Both accounts were opened in 1932. Clearly, as to the Jasper County Savings Bank account, and fairly to be presumed as to the Newton National Bank account, the funds were derived from the funeral business. Both parties wrote checks on these accounts, the funds being used for business, household, and personal uses.

The account in the Savings Bank since its inception has been carried by the bank under various captions, but always with reference to Mrs. Murdoch and the funeral home, until 1939. At that time it was headed Mr. or Mrs. Will Murdoch and was so carried at the time of Mr. Murdoch's death.

The account in the National Bank from its beginning was carried in the name of Will W. Murdoch, until October 1944, when it was headed Mr. or Mrs. Will W. Murdoch, and was so carried at the time of decedent's death.

In February 1942 there was filed in the Savings Bank a so-called signature card, bearing the writing "Will W. Murdoch and Mrs. Will Murdoch." The cashier of said bank states that it bears the signature of Will W. Murdoch and the signature of Mrs. Will Murdoch. This card was held by the bank at the time Will Murdoch died.

On file with the National Bank, at the time decedent died, was a signature card bearing the writing "Will W. Murdoch and Will W. Murdoch by Mrs. W. M." The cashier of this bank states that the signature on the card is Will W. Murdoch and Will W. Murdoch by Mrs. W. M.

No other reference to or identification of these signatures appears in the record. The cards, identical in form except as

to the manner of signature, were offered and received in evidence without objection.

Under the provisions of decedent's will, executed in January of 1944, appellant received a life estate in the entire estate with "the power to use any part of the principal of said property if she finds it necessary for her care, support and comfort." The executor, after qualifying, obtained an order for the widow's allowance, which was in the exact amount of the account in the National Bank and which amount was turned over to her. He also obtained authority to continue the business, which was placed under the supervision of the widow. The account in the Savings Bank was used in this connection.

There is no direct testimony as to the conditions and circumstances under which the cards were signed and filed with the banks. The bookkeeper in the Savings Bank states that it was the custom to check accounts with the signature cards and have them correspond; that probably this card was sent to the Murdochs for signature, and that it was received by the bank February 10, 1942. The existence of the card in the files of the National Bank at the time Murdoch died is all the record shows.

The cards, similar in form, except as above noted, state in part, as follows:

"The undersigned joint depositors, hereby agree each with the other and with the above bank that all sums now on deposit heretofore or hereafter deposited by either or both of said joint depositors with said bank to their credit as such joint depositors with all accumulations thereon, are and shall be owned by them jointly, with right of survivorship and be subject to the check or receipt of either of them or the survivor of them and payment to or on the check of either or the survivor shall be valid and discharge said bank from liability."

While appellant urges several grounds for reversal, they all boil down to the question of the correctness of the court's finding of "no intention to create such an account."

There is no dispute between the parties as to the legal question involved. This court recognizes that joint tenancies with right of survivorship may be created in bank accounts.

The question has been before us under varied situations. In the case of Taylor v. Grimes, 223 Iowa 821, 273 N. W. 898, we held that the mere opening of a joint account, subject to the check of each party, does not in and of itself create a joint tenancy. In the case of Sinift v. Sinift, 229 Iowa 56, 293 N. W. 841, we held that the existence or nonexistence of a joint tenancy with right of survivorship, depended upon the intention of the parties. In neither of the cited cases was there a written agreement between the bank and the parties. In the cited cases evidence showing the situation was received and considered. There was no question of contract involved.

In the case of In re Estate of Winkler, 232 Iowa 930, 937, 938, 5 N. W. 2d 153, 157, we had before us a writing very similar to the one in the instant case. The case was tried on a stipulation of facts and the court found a joint tenancy existed. Referring to the written agreement, we said:

"Here we have the instrument creating the joint tenancy *declaring in express terms* the rights of the parties. The card, which we regard as a contract, shows all the essential features of joint tenancy." (Italics supplied.)

We also said therein:

"The facts in this case also differ from many of the reported cases in that in such cases evidence was offered other than the mere instrument in question * * * on the question of intent. The intention of the parties is the controlling question."

This question was again before this court in the case of O'Brien v. Biegger, 233 Iowa 1179, 11 N. W. 2d 412. No written agreement, such as in the instant case, was involved. We held a contract existed between the bank and the parties creating a joint tenancy. There was direct testimony as to the specific transaction creating the contract. Again we said it was a question of intent of the parties.

The instant case differs from the cases above cited. It is similar to the Winkler case insofar as the agreement is concerned; it is different, in that here there was evidence, other than the agreement, offered upon the question of intent. This

evidence, received over proper objection, was considered by the trial court in reaching its conclusion. The reception of this testimony is assigned as error.

■ As before stated, all parties agree that intent is the determining question. They are not agreed as to what evidence is material and competent in arriving at that intent. This is really the question involved in this appeal.

This court has long recognized the rule that in construing a written agreement, between the parties, the wording of a clear-cut and unambiguous contract must control in construing it and rules of construction apply only where there is ambiguity. Chambers v. First State Bk. & Tr. Co., 218 Iowa 63, 254 N. W. 309; Heiple v. Reinhart, 100 Iowa 525, 69 N. W. 871; Streator Clay Mfg. Co. v. Henning-Vineyard Co., 176 Iowa 297, 155 N. W. 1001; Carson v. Great Lakes Pipe Line Co., 238 Iowa 50, 25 N. W. 2d 855. Upon the specific question, 9 C. J. S., Banks and Banking, section 286, states:

"The intent of the parties may indicate and determine the right of survivorship. Where no other evidence of intent is available, the form of the deposit may control; but when such intent is evidenced by a written agreement, the question of intention ceases to be an issue and the courts are bound by the agreement."

These rules of construction are not contrary to the Winkler case, supra. While the statement in that case to the effect that there was no evidence of intent other than the agreement may have been assumed by the trial court in the instant case as a basis for receiving this testimony, it was merely dictum and should not be construed as announcing a rule of evidence.

We held in the Winkler case, supra, that such an agreement as we have here constituted a contract, consideration being presumed since it was in writing; that it was an agreement *declaring in express terms the rights of the parties.* We view the present writings, so-called signature cards, in the same light. Under our rules of construction, in the absence of a plea of fraud, duress, or mistake, we are bound by the plain and expressed

terms of the agreement. Extrinsic evidence tending to change this expressed intent is not competent.

▪ Appellee Carson in his answer does allege that if decedent signed the cards it was done through inadvertence and mistake and the agreement should be reformed by the court to express the true intent. However, his prayer is merely that the inventory be approved and confirmed. The trial court makes no mention of this issue, nor is it referred to by appellee in his brief and argument, and there is no substantial evidence in the record tending to support such a claim. The question of mistake is not at issue in this case.

▪ From the above, it must follow that the trial court was in error in holding, contrary to the express terms of the agreement, that there was no intention to create a joint tenancy with right of survivorship in the account in the Jasper County Savings Bank. The court found the card was duly signed by both parties.

▪▪ As to the Newton National Bank agreement, the court found the card was signed by Will Murdoch but not by Lillian Marsh Murdoch personally, or in her own right. The only record on this question is the statement of the cashier, Smith, who says the signature is "Will W. Murdoch and Will W. Murdoch by Mrs. W. M."

The burden rests upon appellant to establish the existence of a contract. While there may be some question under the record as to whether the agreement was signed by appellant, the trial court found otherwise. There being evidence on which the court might base its finding, this court will not interfere. We agree with the trial court as to the Newton National Bank account.

Reversed as to the Jasper County Savings Bank account; affirmed as to the Newton National Bank account.—Affirmed in part; reversed in part.

OLIVER, C. J., and BLISS, SMITH, GARFIELD, MANTZ, MULRONEY, and HALE, JJ., concur.